# UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| UNITED STATES OF AMERICA,    ) | |
| )    | |
|     Plaintiff,    ) | |
| )    | |
| v.    ) | Case No. CR-18-288-G |
| )    | Case No. CIV-21-979-G |
| IAN DONTE BRIDGES,    ) | |
| )    | |
|     Defendant.    ) | |

## ORDER

Now before the Court is a pro se Amended Motion to Vacate Sentence Pursuant to 28 U.S.C. § 2255 (Doc. No. 49), filed by Defendant Ian Donte Bridges.[1] The Government has submitted a Response (Doc. No. 66), and Defendant has replied (Doc. No. 67). After careful consideration of the parties' arguments, the relevant authorities, and the case record, the Court determines that no evidentiary hearing is necessary and that the Amended Motion should be denied on the existing record.[2]

---

[1] Because Defendant's Amended Motion supersedes Defendant's original Motion to Vacate Sentence Pursuant to 28 U.S.C. § 2255, Defendant's original Motion (Doc. No. 47) is DENIED AS MOOT.

[2] No evidentiary hearing is required where "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b); *see also United States v. Lopez*, 100 F.3d 113, 121 (10th Cir. 1996).

I.     *Background*[3]

On November 13, 2018, a federal grand jury returned a one-count Indictment against Defendant, charging him with unlawfully possessing a firearm after having previously been convicted of a felony in violation of 18 U.S.C. § 922 (g)(1). *See* Indictment (Doc. No. 3). The charges stemmed from a September 2, 2018 incident in which Defendant shot four home invaders. One assailant was killed, two were seriously wounded, and one sustained non-life-threatening injuries.

On January 2, 2019, Defendant pled guilty to this crime without a plea agreement. *See* Doc. Nos. 15, 16. The PSR found that Defendant was subject to the Armed Career Criminal Act's ("ACCA") 15-year mandatory minimum because he had at least three prior convictions for a violent felony or serious drug offense. *See* PSR ¶ 23; 18 U.S.C. § 924(e)(2)(A)(ii). Specifically, Defendant had prior Oklahoma state-court convictions for (1) assault and battery with a deadly weapon, (2) burglary in the first degree, and (3) and (4) two instances of distribution of a controlled dangerous substance.

After addressing Defendant's objections at sentencing, the Court found that Defendant was subject to the ACCA's 15-year mandatory minimum, which resulted in an offense level of 30, a criminal history category of VI,[4] and an advisory guideline range of

---

[3] Except where specifically noted, the factual account provided herein is drawn from the Final Presentence Investigation Report ("PSR") (Doc. No. 23), which was adopted in relevant part by the Court at sentencing.

[4] The sentencing transcript contains a typographical error reflecting that the Court concluded that Defendant had a criminal history category of XI. Defendant's criminal history category was VI. *See* PSR ¶ 62.

180 to 210 months. *See* Sent'g Tr. (Doc. No. 42) at 4:17-5:7. The Court sentenced Defendant to 180 months' imprisonment to be followed by a three-year term of supervised release. *See id.* at 12:16-13:7; *see also* J. (Doc. No. 30) at 2-3.

On August 26, 2019, Defendant's trial counsel filed a notice of appeal. *See* Notice of Appeal (Doc. No. 32). Shortly thereafter, counsel filed a brief in the appellate court pursuant to *Anders v. California*, 386 U.S. 738 (1967), stating that no nonfrivolous basis existed to challenge Defendant's conviction or sentence and asking to withdraw from the case. *See United States v. Bridges*, 817 F. App'x 606, 610 (10th Cir. 2020). Defendant did not respond to the *Anders* brief, and the Tenth Circuit proceeded to affirm Defendant's conviction and sentence. *See id.* at 610, 613. Specifically, after finding that Defendant had waived any appellate challenge regarding the reasonableness of his sentence, the appellate court addressed Defendant's argument that the district court improperly applied the ACCA's 15-year mandatory minimum. *See id.* at 613-14. The Tenth Circuit "conclude[ed] that the district court correctly ruled that [Defendant's] past Oklahoma convictions for distributing cocaine are 'serious drug offenses' and that [the ACCA's] fifteen-year mandatory minimum applies." *Id.* at 614.

    II.    *Defendant's Amended Motion Under 28 U.S.C. § 2255*

On October 8, 2021, Defendant filed his Amended Motion to Vacate under 28 U.S.C. § 2255. *See* Def's Am. Mot. (Doc. No. 49). In his Motion, Defendant seeks relief on four grounds, raising three claims regarding ineffective assistance of counsel and one

claim regarding violations of his constitutional rights. *See id.* at 5-8. The Court turns first to Defendant's claims of ineffective assistance of counsel.

### A. Ineffective Assistance of Counsel

In Claims One, Two, and Three, Defendant seeks relief on the basis that his appointed attorney, former Assistant Federal Public Defender Tony Lacy, rendered constitutionally ineffective assistance. *See id.* 4-8, 13-19. To show that his counsel's performance was constitutionally ineffective, Defendant must demonstrate that the performance of counsel was deficient and that such deficiency prejudiced the outcome of the case. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984). To establish the first prong of the *Strickland* test, Defendant must show that counsel's performance was unreasonable under "prevailing professional norms." *Id.* at 688. The Supreme Court shuns specific guidelines for measuring deficient performance, as "[n]o particular set of detailed rules for counsel's conduct can satisfactorily take account of the variety of circumstances faced by defense counsel or the range of legitimate decisions regarding how best to represent a criminal defendant." *Id.* at 688-89. Defendant must overcome the presumption that the "challenged action 'might be considered sound trial strategy.'" *Id.* at 689 (quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)). "For counsel's performance to be constitutionally ineffective, it must have been completely unreasonable, not merely wrong." *Boyd v. Ward*, 179 F.3d 904, 914 (10th Cir. 1999).

If Defendant shows deficient performance, he must also show prejudice by establishing "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "When

4

a defendant challenges a conviction, the question is whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." *Id.* at 695. In making that determination, the Court must "tak[e] the unaffected findings as a given" and decide whether the outcome "would reasonably likely have been different absent the errors." *Id.* at 696.

The Court "may address the performance and prejudice components in any order" and "need not address both if [Defendant] fails to make a sufficient showing of one." *Cooks v. Ward*, 165 F.3d 1283, 1292-93 (10th Cir. 1998).

Defendant's Motion raises the following grounds to find his counsel's performance ineffective: (1) that counsel failed to object to and appeal Defendant's prior state drug convictions being used to enhance his sentence under the ACCA; (2) that counsel was ineffective during the plea process; and (3) that counsel's assistance was deficient due to cumulative errors during pretrial, plea, sentencing, and direct appeal. *See* Def.'s Am. Mot. at 4-8, 13-19. The Government argues that each of Defendant's claims of ineffective assistance of counsel is without merit because Defendant has failed to show that his counsel's performance fell below an objective standard of reasonableness or that Defendant was prejudiced as a result of his counsel's allegedly deficient performance. *See* Gov't's Resp. (Doc. No. 66) at 11-28.

### 1. Claim One

In Claim One, Defendant argues that his trial counsel rendered ineffective assistance by failing to object to and later appeal Defendant's prior state drug convictions being used to enhance his sentence under the ACCA. *See* Def.'s Am. Mot. at 5-6, 13-15.[5]

#### i. Standards for Determining Whether a State Offense Qualifies as a Serious Drug Offense Under the ACCA

"The ACCA imposes a sentence enhancement for being a felon in possession of a firearm for any person who has 'three previous convictions . . . for a violent felony or a serious drug offense.'" *United States v. Brandon Williams*, 61 F.4th 799, 804 (10th Cir. 2023) (omission in original) (quoting 18 U.S.C. § 924(e)(1)).

> Relevant here, the statutory definition of "serious drug offense" includes "an offense under State law, involving manufacturing, distributing, or possessing with intent to manufacture or distribute, a controlled substance (as defined in section 102 of the [Controlled Substances Act] (21 U.S.C. 802)), for which a maximum term of imprisonment of ten years or more is prescribed by law."

*Id*. (quoting 18 U.S.C. § 924(e)(2)(A)(ii)).

"To determine whether a state conviction was for a serious drug offense, [the Court] generally begin[s] with the categorical approach." *United States v. Cantu*, 964 F.3d 924, 926 (10th Cir. 2020). The "categorical approach applies to statutes that aren't divisible, i.e., those that contain 'a single, indivisible set of elements.'" *United States v. Degeare*,

---

[5] Defendant also argues that Mr. Lacy's assistance was ineffective because he failed to object at sentencing to the application the of the United States Sentencing Guideline's Career Offender guideline, U.S.S.G. § 4B1.1. *See* Def.'s Am. Mot. at 13-14. The Court, however, did not apply the Career Offender guideline at sentencing as all parties agreed that Defendant was subject to the Armed Career Criminal guideline, U.S.S.G. § 4B1.4. *See* Sent'g Tr. 4:17-6:9; *see also* PSR ¶¶ 23, 43 (making no mention of any application of the Career Offender guideline).

884 F.3d 1241, 1246 (10th Cir. 2018) (quoting *Descamps v. United States*, 570 U.S. 254, 258 (2013)).  The categorical approach is two pronged:

> First, the court looks only to the elements of the state offense.  The particular facts of the defendant's prior offense are irrelevant.  All that counts is what the defendant had to do to be guilty of the offense.  Second, it is not enough that there is an overlap between the elements of the state offense and the definition of *serious drug offense*.  It is necessary that essentially any conduct that satisfies the elements of the state offense also satisfy the definition of *serious drug offense*.  If one can commit the state offense by conduct that is not a serious drug offense, then conviction of the state offense cannot be a predicate offense for the ACCA.

*Cantu*, 964 F.3d at 926-27 (citation omitted).  "Under the categorical approach, a state drug offense that includes non-federally controlled substances is overbroad and thus not categorically a 'serious drug offense.'"  *United States v. Gregory Williams*, 48 F.4th 1125, 1137 (10th Cir. 2022).

At sentencing, Defendant's two 2003 state convictions for distribution of a controlled dangerous substance, in violation of title 63, section 2-401(A)(1) of the Oklahoma Statutes, were classified as serious drug offenses under the ACCA.  *See* PSR ¶¶ 23, 34, 35; *see also* Sent'g Tr. 5:3-19.  Section 2-401(A)(1) makes it unlawful "[t]o distribute, dispense, transport with intent to distribute or dispense, possess with intent to manufacture, distribute, or dispense, a controlled dangerous substance."

Defendant now argues that section 2-401(A) is categorically overbroad because it includes "imitation drugs," while the federal drug laws do not, and that his appointed counsel was ineffective for failing to raise this argument at sentencing and on direct appeal.  *See* Def.'s Am. Mot. at 13-14.  In support of his argument, Defendant specifically cites *United States v. Cantu*, 964 F.3d 924 (10th Cir. 2020), in which the Tenth Circuit held—

7

just days after it affirmed Defendant's conviction and sentence—that another defendant's convictions under section 2-401(A)(1) did not qualify as serious drug offenses under the ACCA because the Oklahoma statute was categorically overbroad. *See id.* at 928-34; *Bridges*, 817 F. App'x at 613.[6]

                ii.        Counsel's Performance Was Not Deficient for Failing to Anticipate a Change in Caselaw

As an initial matter, the Court agrees with the Government that defense counsel's performance cannot be deficient for failing to foresee intervening changes in relevant caselaw. *See, e.g.*, *United States v. Harms*, 371 F.3d 1208, 1212 (10th Cir. 2004) ("The Sixth Amendment does not require counsel for a criminal defendant to be clairvoyant."); *United States v. Ford*, 627 F. App'x 735, 737 (10th Cir. 2015) ("Counsel is not required to predict changes in the law."). While Mr. Lacy represents in his affidavit that raising ACCA-related arguments at sentencing and/or on appeal might have resulted in a different sentence for Defendant, *see* Lacy Aff. (Doc. No. 66-2) ¶ 4, that does not mean that his failure to do so "rises to the level of constitutionally ineffective assistance." *Harms*, 371 F.3d at 1211-12 (holding that counsel's performance was not constitutionally deficient in failing to advise the defendant of a potential distinction between actual and virtual child pornography prior to the defendant entering a guilty plea when the Supreme Court would decide, shortly thereafter, that criminalization of virtual child pornography violated the First Amendment). Accordingly, Defendant has not shown that his counsel's performance

---

[6] Defendant was sentenced on August 26, 2019, and the Tenth Circuit affirmed his sentence and conviction on June 11, 2020. *See* J.; *Bridges*, 817 F. App'x at 613-14. Then, on July 6, 2020, the Tenth Circuit issued its decision in *Cantu*.

was deficient for failing to argue at sentencing and on appeal that Defendant's convictions under section 2-401(A)(1) did not qualify as serious drug offenses under the ACCA months prior to issuance of the Tenth Circuit's decision in *Cantu* finding section 2-401(A)(1) overbroad for purposes of the ACCA. *See Hooks v. Workman*, 606 F.3d 715, 723 (10th Cir. 2010) (explaining that counsel's performance "must have been completely unreasonable, not merely wrong," to be deficient (internal quotation marks omitted)).

          iii.    <u>Defendant Cannot Demonstrate Prejudice Due to Counsel's Failure to Raise the ACCA Argument at Sentencing and on Appeal</u>

Even if defense counsel's performance was deficient in failing to object to and later appeal the use of Defendant's prior state drug convictions to enhance his sentence under the ACCA, Defendant cannot show that he was prejudiced by this failure for the reasons explained below.

Citing *Cantu*, Defendant argues that his prior state drug convictions do not qualify as serious drug offenses under the ACCA because the statute of conviction, section 2-401(A)(1), is categorically overbroad in that it prohibits distribution of "imitation drugs" while federal drug laws do not. Def.'s Am. Mot. at 5, 14-15.

As an initial matter, Defendant misreads *Cantu*, which in no way dealt with imitation controlled substances. The Tenth Circuit's analysis in *Cantu* turned on the fact that following a 2008 amendment, Oklahoma's drug schedules included drugs that the federal drug schedules did not. *See Cantu*, 964 F.3d at 928-34. Given this categorical mismatch, the appellate court ultimately concluded that because section 2-401(A)(1) is not divisible by type of drug, a conviction for a violation of that statute does not qualify as a

9

serious drug offense under the ACCA. *See id.* at 934. Shortly after *Cantu*, the Tenth Circuit specified that section 2-401(A)(1) was not overbroad on this basis prior to the 2008 amendment to Oklahoma's drug schedules. *See United States v. Traywicks*, 827 F. App'x 889, 891-92 (10th Cir. 2020) (finding that the defendant's 1990, 1991, and 2002 convictions for violations of section 2-401(A)(1) were "ACCA predicates, as they are no broader than a serious drug offense"). Here, Defendant's section 2-401(A)(1) convictions both occurred in 2003. *See* PSR ¶¶ 34, 35. Accordingly, Defendant cannot argue, based on *Cantu* alone, that his prior state drug convictions were not for serious drug offenses under the ACCA. *See Traywicks*, 827 F. App'x at 891-92.

The only specific mismatch between the federal and state drug schedules identified by Defendant is presented in his contention that section 2-401(A)(1) prohibited distribution of "imitation drugs" while federal drug laws do not. This argument misreads the statute of conviction. Section 2-401(A)(1) prohibits the distribution of "a controlled dangerous substance" and does not now, and did not in 2003, directly address imitation controlled substances. *See* Okla. Stat. tit. 63, § 2-401(A)(1). Rather, section 2-401(A)(3)—a clearly divisible section of the Oklahoma statute, *cf. Cantu*, 964 F.3d at 928-34 (considering whether section 2-401(A)(1) is divisible without ever suggesting that subsection (A)(3) should be grouped with (A)(1) for purposes of the categorical approach)—prohibits the distribution of imitation controlled substances. *See* Okla. Stat. tit. 63, § 2-401(A)(3). Further, Defendant does not identify any imitation controlled substance in Oklahoma's 2003 drug schedules, *see* Okla. Stat. tit. 63, §§ 2-203 et seq. Accordingly, the statute of conviction, section 2-401(A)(1), did not in 2003 encompass or otherwise implicate

imitation controlled substances as Defendant contends. *See* Def.'s Am. Mot. at 14-15. Defendant has not shown that Section 2-401(A)(1) is categorically overbroad due to the inclusion of imitation controlled substances or "imitation drugs."

For these reasons, Defendant has not shown that, in light of *Cantu*, his prior state drug convictions were improperly classified as serious drug offenses under the ACCA at sentencing. *See also Traywicks*, 827 F. App'x at 891-92; *Bridges*, 817 F. App'x at 612-14. Consequently, Defendant has not demonstrated that he suffered prejudice based on his counsel's failure to argue that these convictions did not qualify as ACCA-predicate offenses at sentencing and on appeal.[7] Defendant is therefore not entitled to relief pursuant to § 2255 with regard to Claim One.

---

[7] Defendant has also submitted a Supplement (Doc. No. 50), in which he asks the Court to consider *United States v. Gregory Williams*, 48 F.4th 1125, in further support of his argument that Oklahoma's drug laws are broader than the federal drug laws because Oklahoma law prohibits the distribution of "imitation substances." Def.'s Suppl. at 1. First, the Court has, for the reasons previously explained, rejected Defendant's argument that section 2-401(A)(1) is overbroad due to the inclusion of imitation controlled substances. And further, as the Government points out, *Gregory Williams* did not involve imitation substances but instead analyzed a categorical overbreadth challenge to section 2-401(A)(1) based on the inclusion of hemp in Oklahoma's drug schedules at the time of that defendant's prior state convictions. *See* Gov't's Resp. at 20-22; *Gregory Williams*, 48 F.4th at 1137. There, the appellate court ultimately concluded that because the federal schedules in effect at the time of the federal offense did not include hemp, the defendant's prior offenses were categorically overbroad. *See Gregory Williams*, 48 F.4th at 1142. But Defendant does not raise the hemp argument in his Supplement, and, although Defendant's arguments are entitled to a liberal construction, the Court and Government counsel are not required to fashion Defendant's arguments for him out of conclusory allegations. *See United States v. Fisher*, 38 F.3d 1144, 1147 (10th Cir. 1994). In any event, defense counsel's failure to anticipate the Tenth Circuit's decision in *Gregory Williams*, which came down years after Defendant's sentencing and appeal, does not rise to the level of ineffective assistance of counsel. *See supra*; *Harms*, 371 F.3d at 1211-12.

11

### 2.     *Claim Two*

Claim Two, liberally construed, alleges ineffective assistance of counsel during the plea process.  *See* Def.'s Am. Mot. at 15-17.  Specifically, Defendant argues that his counsel failed to conduct an independent investigation of the facts and to properly advise Defendant on the law, including the availability of a justification defense.  *See id.*

As an initial matter, Defendant never identifies what additional investigation his counsel should have undertaken.  Conclusory allegations alone, without supporting factual averments, are insufficient to state a valid claim under § 2255.  *See Fisher*, 38 F.3d at 1147 (rejecting defendant's ineffective-assistance arguments and explaining that the court is "not required to fashion [the defendant's] arguments for him where his allegations are merely conclusory in nature and without supporting factual averments").  Defendant "does not specify what counsel would have learned" from further investigation, and "[t]he mere speculation that [further investigating the case] would have produced exculpatory evidence is not sufficient to demonstrate prejudice."  *United States v. Clark*, 596 F. App'x 696, 701 (10th Cir. 2014).

Defendant also argues that but for his counsel's ineffective assistance, he would have proceeded to trial and raised a justification defense.  *See* Def.'s Am. Mot. at 17.  A justification defense to a felon in possession charge requires the defendant to show:

> (1) that defendant was under an unlawful and present, imminent, and impending threat of such a nature as to induce a well-grounded apprehension of death or serious bodily injury;
>
> (2) that defendant had not recklessly or negligently placed himself in a situation in which it was probable that he would be forced to choose the criminal conduct;

12

(3) that defendant had no reasonable, legal alternative to violating the law, a chance both to refuse to do the criminal act and also to avoid the threatened harm; and

(4) that a direct causal relationship may be reasonably anticipated between the criminal action taken and the avoidance of the threatened harm.

*United States v. Butler*, 485 F.3d 569, 572 (10th Cir. 2007) (alterations and internal quotation marks omitted); *see also* Lacy Aff. ¶ 6.

As the Government points out, Defendant's counsel evaluated a potential justification defense and determined that such a defense was not viable. *See* Gov't's Resp. at 24 (citing Lacy Aff. ¶ 6). Additionally, in the context of a felon-in-possession charge, "the imminent danger must persist throughout the possession" of the firearm. *Butler*, 485 F.3d at 573. In his affidavit, defense counsel explains that any potential justification defense fails on this point because Defendant was "armed and ready well prior to being attacked." Lacy Aff. ¶ 6. The Court agrees and concludes that Defendant has made no showing that his counsel's assistance was objectively unreasonable in electing not to pursue a justification defense in this case. Nor has Defendant shown that he was prejudiced by his counsel's actions in this regard.

Further, Defendant argues that his plea was not knowing or voluntary due to lack of or incorrect advice from his trial counsel. *See* Def.'s Am. Mot. at 16-17 (alleging that counsel's advice "was so incorrect and so insufficient that it undermined [Defendant's] ability to make a voluntary and intelligent choice"). "In the guilty-plea context, *Strickland*'s prejudice prong ordinarily requires a defendant to demonstrate 'there is a reasonable probability that, but for his counsel's errors, he would not have pleaded guilty

13

and would have insisted on going to trial.'" *United States v. Dominguez*, 998 F.3d 1094, 1111 (10th Cir. 2021) (alteration and emphasis omitted) (quoting *Hill v. Lockhart*, 474 U.S. 52, 59 (1985)). "A reasonable probability is a probability sufficient to undermine confidence in the outcome, which necessitates a substantial, not just conceivable, likelihood of a different result." *Id.* (internal quotation marks omitted).

"Courts should not upset a plea solely because of post hoc assertions from a defendant about how he would have pleaded but for his attorney's deficiencies," however. *Id.* at 1112. "[A] defendant's mere allegation that he would have insisted on trial but for his counsel's errors, although necessary, is ultimately insufficient to entitle him to relief." *Id.* (internal quotation marks omitted).

Defendant fails to offer an explanation as to why he would have proceeded to trial but for his counsel's alleged deficiencies. As previously discussed, any potential justification defense was not viable. Further, Defendant confessed in a Mirandized interview to possessing the firearm and led investigators to the firearm. *See* Lacy Aff. ¶ 9; PSR ¶ 10. Accordingly, Defendant has not established a reasonable probability that, but for his counsel's errors, he would not have pleaded guilty and would have insisted on going to trial. *See Dominguez*, 998 F.3d at 1111.

For these reasons, the Court concludes that Defendant has not shown that his counsel's representation was deficient during the plea process or that he suffered prejudice

14

due to his counsel's unprofessional errors.[8]  Accordingly, Defendant is not entitled to relief pursuant to § 2255 on this basis.

### 3. *Claim Three*

In Claim Three, Defendant argues that his counsel was also deficient in several other ways, repeating some arguments raised in Claim Two regarding counsel's representation during the plea process.  The Court does not find it necessary to revisit counsel's actions during the plea process, as it has already found that Mr. Lacy's performance was not deficient in this regard, and will instead focus on the distinct allegations.

To begin, Defendant claims that his counsel had a conflict of interest but does not identify the specific conflict.  *See* Def.'s Am. Mot. at 19.  Defendant also claims his counsel failed to present the strongest issues for appeal but does not identify those issues.  *See id.* And further, Defendant alleges that his counsel did not present available evidence and legal authority at Defendant's sentencing, but Defendant does not identify what the evidence and authority was or explain why this material would have made a difference at sentencing.

---

[8] To the extent that Defendant argues that he would have proceeded to trial had he known he would have been subject to the ACCA's 15-year mandatory minimum, this argument is unavailing.  Defendant does not allege that his counsel advised him that he would not be subject to the ACCA, and Defendant's signed plea petition evidences a clear understanding that he could face a mandatory minimum term of imprisonment of fifteen years if the ACCA applied.  *See* Plea Pet. (Doc. No. 16) ¶ 19.  In addition, at the change of plea hearing, the Court advised Defendant of the potential applicability ACCA's enhanced penalties. *See* Gov't's Resp. Ex. 3, Tr. 6:16-8:2 (Doc. No. 66-3).

*See id.* at 18. These general assertions are insufficient to support Defendant's claim for ineffective assistance of counsel. *See Fisher*, 38 F.3d 1147.[9]

Defendant also argues that his counsel was ineffective for not moving to dismiss the indictment "on the grounds that it was not presented or returned by the grand jury in open court." Def.'s Am. Mot. at 18. But, as stated in counsel's affidavit, the Indictment was properly returned by the grand jury and signed by the foreperson. *See* Lacy Aff. ¶ 7; Indictment at 2.

Defendant further contends that his counsel should have moved to dismiss based on venue. *See* Def.'s Am. Mot. at 18. But there was no reasonable basis to do so. *See* Gov't's Resp. at 28. Defendant was charged with a federal crime that took place in the Western District of Oklahoma. *See* Lacy Aff. ¶ 10; Indictment at 1.

Finally, Defendant argues that his counsel was ineffective for failing to file a motion to suppress. *See* Def.'s Am. Mot. at 18. Defendant does not identify what evidence counsel should have moved to suppress or on what ground suppression was warranted, however. Further, defense counsel explains that, in his view, there was no argument to make regarding suppression. *See* Lacy Aff. ¶ 9. Defendant had confessed in a Mirandized interview to possessing the firearm and led law enforcement to that firearm. *See id.* And Defendant has not suggested that his confession was coerced or was otherwise involuntary.

---

[9] In Mr. Lacy's affidavit, he states that he and Defendant "thoroughly [discussed] all the relevant facts and law, including whether or not [Defendant] had a defense" and that he also informed Defendant that he could be subject to the ACCA sentencing. Lacy Aff. ¶ 8.

16

Accordingly, the Court finds that Defendant has not shown that his counsel's performance was deficient for any of the reasons discussed above or that he has been prejudiced by any of these alleged errors. Defendant is therefore not entitled to relief pursuant to § 2255 on any ground raised in Claim Three.

B.   Claim Four: Alleged Constitutional Violations

In Claim Four, Defendant argues that his conviction and sentence violate his First, Second, Fourth, Fifth, Sixth, and Eighth Amendment rights under the United States Constitution. *See* Def.'s Am. Mot. at 8. The Government asserts that these claims are procedurally barred, *see* Gov't's Resp. at 28, and the Court agrees. Defendant did not raise any claims on direct appeal as he never responded to his counsel's *Anders* brief. *See id.*

"A § 2255 motion is not intended as a substitute for an appeal." *United States v. Cervini*, 379 F.3d 987, 990 (10th Cir. 2004). "Consequently failure to raise an issue either at trial or on direct appeal imposes a procedural bar to habeas review." *Id.* (internal quotation marks omitted). There are two exceptions to the procedural bar of defaulted claims, however. *See id.*

"First, if defendant can show both good cause for failing to raise the issue earlier, and that the court's failure to consider the claim would result in actual prejudice to his defense, the procedural bar will not be applied." *Id.* A defendant can show "cause" by demonstrating that "his claim was 'so novel that its legal basis was not reasonably available to counsel.'" *United States v. Wiseman*, 297 F.3d 975, 979 (10th Cir. 2002) (alteration omitted) (quoting *Reed v. Ross*, 468 U.S. 1, 16 (1984)). "Cause can also be established by showing that counsel rendered constitutionally ineffective assistance." *Id.*

Second, if a defendant can show that "failure to consider the federal claims will result in a fundamental miscarriage of justice, the court may reach the merits of the claimed constitutional deficiencies despite the procedural bar." *Cervini*, 379 F.3d at 990-91 (citation and internal quotation marks omitted). This exception "is a markedly narrow one, implicated only in extraordinary cases where a constitutional violation has probably resulted in the conviction of one who is actually innocent." *United States v. McGaughy*, 670 F.3d 1149, 1159 (10th Cir. 2012) (alteration and internal quotation marks omitted).

Defendant does not explain how his sentence and conviction violate his constitutional rights, or provide any argument or factual averments suggesting that his claims of constitutional violations support the application of either of the exceptions to procedural bar. Defendant states only that he did not raise these issues on direct appeal due to "insufficient record and/or ineffective assistance of counsel." Def.'s Am. Mot. at 8.

To sustain a claim of ineffective assistance of appellate counsel, Defendant must show "(1) constitutionally deficient performance, by demonstrating that his appellate counsel's conduct was objectively unreasonable, and (2) resulting prejudice, by demonstrating a reasonable probability that, but for counsel's unprofessional error(s), the result of the proceeding—in this case the appeal—would have been different." *Cargle v. Mullin*, 317 F.3d 1196, 1202 (10th Cir. 2003). Appellate counsel, however, "need not (and should not) raise every nonfrivolous claim, but rather may select from among them in order to maximize the likelihood of success on appeal." *Id.* (internal quotation marks omitted). Therefore, "in analyzing an appellate ineffectiveness claim based upon the failure to raise

an issue on appeal, [the Court] look[s] to the merits of the omitted issue." *Id.* (internal quotation marks omitted).

Here, the Court cannot evaluate the merits of the omitted alleged constitutional violations because Defendant does not describe how his sentence and conviction violates his First, Second, Fourth, Fifth, Sixth, and Eighth Amendment rights beyond merely claiming that it is so. Accordingly, Defendant has not shown that his counsel's failure to raise claims of constitutional violation on appeal constituted deficient performance or that he was prejudiced in this regard. The Court therefore finds that Defendant has not shown that his claims of constitutional violations are subject to an exception to procedural bar, concludes that these claims are procedurally barred, and finds that Defendant is not entitled to relief pursuant to § 2255 on any ground raised in Claim Four.

## CONCLUSION

For the reasons explained above, Defendant Ian Donte Bridges' Amended Motion to Vacate Under 28 U.S.C. § 2255 (Doc. No. 49) is DENIED.

Pursuant to Rule 11(a) of the Rules Governing Section 2255 Proceedings, the Court must issue or deny a certificate of appealability ("COA") when it enters a final order adverse to a defendant. A COA may issue only upon "a substantial showing of the denial of a constitutional right." *See* 28 U.S.C. § 2253(c)(2). "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327

(2003). Upon consideration, the Court concludes that the requisite standard is not met in this case. Therefore, a COA is denied.

Defendant's remaining pending motions (Doc. Nos. 70, 71) are DENIED AS MOOT.[10]

A separate judgment shall be entered.

IT IS SO ORDERED this 30th day of September, 2024.

CHARLES B. GOODWIN
United States District Judge

---

[10] In Defendant's most recent filing, he requests leave to further amend his § 2255 motion in order to assert two new claims: (1) that trial counsel rendered ineffective assistance of counsel at sentencing by failing to argue for a downward departure on the basis of the victims' conduct, and (2) that 18 U.S.C. § 922(g)(1) is unconstitutional as applied to Defendant. *See* Doc. No. 71, at 2-13.

> [P]ursuant to Rule 15(c) [of the Federal Rules of Civil Procedure], an untimely amendment to a § 2255 motion which, by way of additional facts, clarifies or amplifies a claim or theory in the original motion may, in the District Court's discretion, relate back to the date of the original motion if and only if the original motion was timely filed and the proposed amendment does not seek to add a new claim or to insert a new theory into the case.

*United States v. Espinoza-Saenz*, 235 F.3d 501, 505 (10th Cir. 2000) (alterations and internal quotation marks omitted). Here, Defendant seeks to add two new claims, based on new legal theories that do not relate back to the claims originally raised in the Amended Motion, and the three-year statute of limitations period prescribed by 28 U.S.C. § 2255(f)(1) has expired. These new claims are consequently time barred and amendment under Rule 15(c) is not warranted. *See id.*; *United States v. Estes*, Nos. CR-09-181-D, CIV-11-377-D, 2011 WL 4904261, at *3 (W.D. Okla. Oct. 14, 2011).